The Honorable Ronald B. Leighton

1
2
3
4
5
6

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRACY AYNES,

        Plaintiff,

    v.

KELLOGG SALES COMPANY,

        Defendants.

Case No. C07-05623 RBL

DECLARATION OF LEIGH ANN
COLLINGS TIFT IN SUPPORT OF
DEFENDANT KELLOGG'S
OPPOSITION TO MOTION TO
COMPEL

I, Leigh Ann Collings Tift, hereby declare as follows:

    1.     I am one of the attorneys representing Kellogg Sales Company ("Kellogg"), in the above-captioned matter,  I have personal knowledge of the matters related herein.

    2.     On September 9, 2008, Plaintiff Tracy Aynes was deposed.   I represented Defendant, Kellogg at the deposition.  Ms. Aynes was represented by Ms. Sargent.  Attached as **Exhibit 1** are true and correct pages of the transcript of the video taped deposition of Ms. Aynes: 36, 44, 113-117.

    3.     Among the numerous documents that were produced to Plaintiff in discovery were copies of "score cards" for employees in Kellogg's Western Region.  Attached as Exhibit 2 is an example of a score card.  The information it contains relates to sales performance, and does

DECL. OF LEIGH ANN TIFT
ISO DEF KELLOGG'S OPP. TO
MTN TO COMPEL
  (C07-5623 RBL)

-1-

LITTLER MENDELSON, P.C.
One Union Square
600 University St., Suite 3200
Seattle, WA  98101
Phone: 206.623.3300

1    not reflect other aspects of an employee's work performance. Until recently, Plaintiff's counsel

2    agreed to limit production of the score cards to Kellogg's Western Region (the only group

3    against whose performance Plaintiff was measured). However, Plaintiff's counsel suddenly

4    changed her mind. Plaintiff's counsel did not explain why her belief regarding relevance and the

5    proper scope of discovery has changed until this motion was filed, and then it was stated that

6    there was an intention to show Plaintiff was "exceptional" relative to the Snacks Division

7    nationwide. Plaintiff's sales performance has never been contested as anything other than good,

8    as even she conceded at her deposition.

9        4.    Attached as Exhibit 3 to this Declaration is Kellogg's Fifth Supplemental

10   Responses to Discovery. In making this final supplementation, Kellogg completed its production

11   of all EEO-1 reports, identified all Kellogg Zone Managers, and produced complaints of

12   discrimination and harassment for the Western Region. None of these requests were ever

13   opposed by Kellogg, as the correspondence attached to Ms. Sargent's Declaration reflects. It is

14   unfortunate that these last items took so long, but, in fairness, Kellogg produced 60,000 pages of

15   information, both in paper copy and electronically, and had numerous discussions with Plaintiff's

16   counsel related to these requests.

17       5.    To my knowledge, Plaintiff's counsel has never raised any concerns with the

18   "completeness" of Kellogg's answer to RFP 14. As characterized in this motion, the Request is

19   materially overbroad. Plaintiff is well aware that Regional Managers frequently meet with

20   subordinates for events as common as walking through stores where Kellogg's products are sold.

21   While this is an "employee performance issue," these casual reviews are not an issue in this case,

22   and it would be very burdensome for Kellogg to have to search its files for any record of any

23   conversation related to "performance" by subordinate employees—particularly where, as here,

24   these informal conversations at the stores were not an issue for Plaintiff. Instead, the

25   performance concerns related Plaintiff that led to her termination were documented in formal

26   **DECL. OF LEIGH ANN TIFT**
**ISO DEF KELLOGG'S OPP. TO**
**MTN TO COMPEL**
(C07-5623 RBL)

LITTLER MENDELSON, P.C.
One Union Square
600 University St., Suite 3200
Seattle, WA 98101
Phone: 206.623.3300

Firmwide:86740544.1 047719.1009

1    disciplinary memos.  Kellogg has, for the record, searched for all documents that evidence like

2    discipline by the Regional Managers.

3         6.. Plaintiff's counsel has not conferred with Defendants in regard to a demand for

4    "demographic" information related to females in the Snacks Division, and that is not a discovery

5    request in any event.    Likewise, Plaintiff's counsel has never spoken to anyone about her

6    concerns about contacting Plaintiff's current employer.  Plaintiff's performance at her current

7    job, her earnings and her earning potential are certainly relevant to her claims in this case.

8         7.    With respect to the location of the depositions of out of state witnesses, Kellogg's

9    counsel has attempted to explain to Plaintiff that the non-resident managers do travel

10   occasionally (not regularly) to Washington, but they do so for a specific business purpose.  What

11   counsel really intends is that the non-resident employees remain in Washington so that they can

12   be deposed.  Again, Plaintiff's demand to delay business travel for her convenience has not been

13   the express subject of discussions (and counsel for Kellogg notes that nowhere in any

14   correspondence has Kellogg ever agreed to do this, despite counsel's opinion to the contrary).

15   Kellogg has offered to stipulate to video depositions of these managers, and that is a solution

16   both cheaper and more appropriate that delaying non-resident managers from scheduled business

17   appointments.

18

19

20

21

22

23

24

25

26   **DECL. OF LEIGH ANN TIFT
     ISO DEF KELLOGG'S OPP. TO
     MTN TO COMPEL**
     (C07-5623 RBL)

-3-

LITTLER MENDELSON, P.C.
One Union Square
600 University St., Suite 3200
Seattle, WA  98101
Phone: 206.623.3300

Firmwide:86740544.1 047719.1009

1    **I declare that the above statements are true to the best of my knowledge and belief,**

2    **and that I understand that it is made for use as evidence in court and is subject to penalty**

3    **for perjury.**

4    September 22, 2008.

5

6    s/Leigh Ann Collings Tift
       Leigh Ann Collings Tift, WSBA #11776

7    ltift@littler.com
       LITTLER MENDELSON, P.C.

8    One Union Square
       600 University Street, Suite 3200

9    Seattle, WA  98101-3122
       Phone:         206.623.3300

10   Fax:            206.447.6965
       E-Mail:        ltift@littler.com

11

12   Attorneys for Defendant
       KELLOGG SALES COMPANY

13

14

15

16

17

18

19

20

21

22

23

24

25

26   **DECL. OF LEIGH ANN TIFT**
       **ISO DEF KELLOGG'S OPP. TO**
       **MTN TO COMPEL**
       (C07-5623 RBL)

LITTLER MENDELSON, P.C.
One Union Square
600 University St., Suite 3200
Seattle, WA  98101
Phone: 206.623.3300

Firmwide:86740544.1 047719.1009

1

**CERTIFICATE OF SERVICE**

2          I am a resident of the State of Washington, over the age of eighteen years, and not a party

3   to the within action.  My business address is 600 University Street, Suite 3200, Seattle, WA

4   98101.  On September 22, 2008, I electronically filed the:

5

6   **DECLARATION OF LEIGH ANN COLLINGS TIFT IN SUPPORT OF DEFENDANT KELLOGG'S OPPOSITION TO MOTION TO COMPEL**

7

8          with the Clerk of the Court using the CM/ECF system which will send notification of

9

10  such filing The Honorable Ronald B. Leighton and to the following:

11  | | |
|---|---|
| Clayton Ernest Longacre | Heather M. Sager |
| LONGACRE & ADAMS | Cheryl A. Sabnis |
| 569 Division St., Suite F | DRINKER, BIDDLE & REATH LLP |
| Port Orchard, WA 98366 | 50 Freemont Street, 20th Floor |
| Telephone:    (360) 876-7290 | San Francisco, CA  94105-2235 |
| Fax:             (360) 876-0204 | Telephone:    (415) 591-7500 |
| Email:          longacrelaw@msn.com | Fax:             (415) 591-7510 |
| | E-mail:         heather.sager@dbr.com |
| | E-mail:         cheryl.sabnis@dbr.com |

12

13

14

15

16

17  Daniel P. Mallove
2003 Western Avenue, Ste. 400
18  Seattle, WA  98121
Telephone:    (206) 239-9933
19  Fax:             (206) 587-0277
E-mail:          dmallove@dpmlaw.com
20

21         I declare under penalty of perjury under the laws of the State of Washington that the

22  above is true and correct.  Executed on September 22, 2008, at Seattle, Washington.

23

24                                        /s/ Savanna L. Stevens
                                       Savanna L. Stevens
25                                        sstevens@littler.com

26  **DECL. OF LEIGH ANN TIFT
ISO DEF KELLOGG'S OPP. TO
MTN TO COMPEL**
(C07-5623 RBL)

LITTLER MENDELSON, P.C.
One Union Square
600 University St., Suite 3200
Seattle, WA  98101
Phone: 206.623.3300

Firmwide:86740544.1 047719.1009

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRACY AYNES,                        )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   No. C07-05623 RBL
                                    )
KELLOGG SALES COMPANY,              )
                                    )
            Defendants.             )
                                    )

VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION OF

TRACY AYNES

Tuesday, September 9, 2008
9:00 a.m.
600 University Street, Suite 3200
Seattle, Washington

Reported by Marlis J. DeJongh, CCR, RPR

Lic. No. DE-JO-NM-J498K9

MARLIS J. DeJONGH & ASSOCIATES
206-583-8711

07826513-bc8a-431e-b22d-125ff0e47c95

VIDEOTAPED DEPOSITION OF TRACY AYNES, 9/9/08

Page 36

1    A.    The gist of it basically is, you know, regardless

2    of whether or not the activity is happening, we need to

3    capture the volume, you know, make it happen.

4    Q.    That's true, isn't it?

5    A.    I guess so.

6    Q.    So after this management team was replaced who was

7    your direct supervisor?

8    A.    That would be Angelo Chiazza.  Scott O'Hare also

9    above him.

10    Q.    And who was your immediate supervisor?

11    A.    Angelo Chiazza.

12    Q.    Who was Roland Carey?

13    A.    Roland Carey hired on later.  They added a new

14    layer of management between the director and he was an

15    associate director.

16    Q.    Now when Dean Allen was your supervisor did you

17    feel that you were successful?

18    A.    I was successful.

19    Q.    No problems?

20    A.    I didn't have any problems with my success while I

21    worked with Dean Allen.

22    Q.    Did you have any problems with anything?

23    A.    There would be all the problems that we were

24    resolving in the zone.

25    Q.    And what were the problems that were being resolved

07826513-bc8a-431e-b22d-125ff0e47c95

VIDEOTAPED DEPOSITION OF TRACY AYNES, 9/9/08

Page 44

1    of the activity.

2         With a customer like Winco it's particularly important

3    because of their velocity.  And they sell in pallet

4    quantities, so if you don't forecast properly you will not

5    have the product to sell during their ad.  So just, again,

6    communication.

7         Q.   And did you criticize Darwin Chaffin?

8         A.   I have spoke with all of them and their supervisors

9    and mine.

10        Q.   And did you criticize Steve Freeman?

11        A.   I have spoke with him and his supervisors and mine.

12        Q.   And when you say you spoke with his supervisors,

13   did you speak directly to them or did you insist on

14   including your management chain as well?

15        A.   Generally copying your manager on what's happening

16   in the trade is required.  Just like you're responsible for

17   your zone's volume, they're responsible for the entire west,

18   and if something is going awry and you're not making them

19   aware of it, that's a very big problem.

20             (Exhibit No. 3 marked for identification.)

21        Q.   Ms. Aynes, you have been handed a document which

22   has been marked exhibit No. 3.  Do you recognize this?

23        A.   Yes.

24        Q.   And this is an e-mail chain beginning the end of

25   July and carrying through to August of 2005, correct?

07826513-bc8a-431e-b22d-125ff0e47c95

VIDEOTAPED DEPOSITION OF TRACY AYNES, 9/9/08

Page 113

1      Ms. Aynes, you've been handed a document which is marked

2   Exhibit 18.  Would you take a minute and look at this.

3      A.    (Witness reviewing document.)

4   Okay.

5      Q.    Do you remember receiving this?

6      A.    I can't say that I do.

7      Q.    Did you know that your unsaleable rate made the

8   Pacific Northwest the worst zone in the country?

9      A.    Yes, I looked at it.

10     Q.    And Mr. Chiazza writes, These results can only mean

11  one of two things.  Either you directed your zone to ignore

12  the region direction so the Pacific Northwest could achieve

13  budget in 2005, or your follow-up to make sure the execution

14  was being implemented did not happen.

15     Do you see that?

16     A.    Yes.

17     Q.    He goes on to write, This performance is not

18  acceptable and cannot continue.

19     Now you knew you had a problem with unsaleable rates in

20  the Pacific Northwest zone, correct?

21     A.    Yes.

22     Q.    And in regard to your work performance, certainly

23  you knew that there were some things you were doing that

24  were good, very good.  And what things were you doing well

25  in the Pacific Northwest zone by the spring of 2006?

07826513-bc8a-431e-b22d-125ff0e47c95

VIDEOTAPED DEPOSITION OF TRACY AYNES, 9/9/08

Page 114

1      A.    In regards to unsaleables specifically or just in

2  general?

3      Well, we were achieving our sales budgets for the most

4  part, and we had resolved a lot of internal HR issues and

5  staffing and training.  And even as far as unsaleables,

6  where those stand, the improvements year over year were at

7  the top in the nation also from what they had been

8  previously.  So even though they were not ideal yet, they

9  were well on their way.

10     Q.    Now in terms of sales budgets, you were actually

11 complimented on how well you did in achieving sales in your

12 zone, correct?

13     A.    Yeah.

14     Q.    You were recognized and fairly recognized for your

15 sales?

16     A.    Yes.

17     Q.    And in terms of your personnel matters and staffing

18 and training, those had been called to your attention at the

19 end of 2005 in your performance evaluation, correct?

20     A.    I'm not sure what you mean about that, called to my

21 attention.

22     Q.    Well, while it's true that your sales budgets and

23 your sales and driving sales in the Pacific Northwest zone,

24 it had been called to your attention that your performance

25 in regard to people skills, the way you communicated with

MARLIS J. DeJONGH & ASSOCIATES
206-583-8711

07826513-bc8a-431e-b22d-125ff0e47c95

VIDEOTAPED DEPOSITION OF TRACY AYNES, 9/9/08

Page 115

1   people were not good, correct?

2        A.    Correct.

3        Q.    And you knew about the unsaleables?

4        A.    Yes.

5              (Exhibit No. 19 marked for identification.)

6        Q.    Ms. Aynes, I've handed you a document which is

7   marked as Exhibit 19.  Do you recognize this?

8        A.    Yes.

9        Q.    And tell me what this is.

10       A.    It's a performance management, PMP.

11       Q.    And it indicates that your manager is Roland Carey

12  at the time this was delivered?

13       A.    At the time it was delivered.

14       Q.    Do you know when it was delivered?

15       A.    Yes.  In March.

16       Q.    And Mr. Carey points out in the middle box where it

17  says, Strengthen core organizational capabilities, create an

18  environment that engages cross-functional, cross-regional

19  and cross-business that eliminates duplicity, conduct org

20  reviews, support utilization of shared services, and so on.

21  And he writes that this is not accomplished.

22       You have a good relationship with the DC team but the

23  cross-relationship effectiveness stops there.  Major issues

24  with the working relationships with the account team, region

25  team, MTS managers and Kroger team.  You blame others for

07826513-bc8a-431e-b22d-125ff0e47c95

VIDEOTAPED DEPOSITION OF TRACY AYNES, 9/9/08

Page 116

1    problems while deflecting responsibility from yourself.  You

2    have a hard time dealing with the gray areas of our business

3    and have developed a we-against-them attitude.  You have

4    openly berated and talked down to account team according to

5    the feedback and observations from other managers and

6    myself.  I felt you did not fully embrace our conflict

7    management seminar held in 2005 in Seattle with the account

8    team and this, this has led to continued problems.  This

9    area must be improved immediately and corrected in 2006.

10        You knew that he was unhappy with your performance at

11   the end of 2005, correct?

12        A.   Yes.

13        Q.   And continuing on, better manage our cash, that

14   thing, he also mentions that there are two things not

15   accomplished under here, Pacific Northwest productivity for

16   2005 was minus 1.1 percent.  Minus 1.10 percent, correct?

17        A.   Yeah.  I'm not sure what that's in relation, how

18   that's tabulated, because we were underspent on our budget,

19   which is good for variable labor, so I'm not sure what that

20   ties to there.

21        Q.   And then the other thing that's not accomplished

22   here is unsaleable actual, and you knew about that too.  The

23   final line in the right-hand column.

24        A.   Yes.

25        Q.   So it would not be fair to say that you got a

VIDEOTAPED DEPOSITION OF TRACY AYNES, 9/9/08

Page 117

1    sterling performance evaluation at the end of 2005 now,

2    would it?

3        A.    No.

4        Q.    There were criticisms of your work performance?

5        A.    Yes.

6        Q.    In May of 2005 you received a 45-day performance

7    improvement plan, correct?

8        A.    Uh-huh.

9              (Exhibit No. 20 marked for identification.)

10       Q.    And in this document you were told that your work

11   performance has not been at an acceptable level, correct?

12       A.    Correct.

13       Q.    And did they explain to you what it was that they

14   felt was -- Roland I'm speaking of, and Angelo, did they

15   explain what it was that was not sufficient in terms of your

16   performance?

17       A.    Yes.

18       Q.    What did you hear them say?

19       A.    What is bulleted here.

20       Q.    Okay.  So you understood them to be telling you

21   that your communications with Kellogg's employees have been

22   abrasive and accusatory?

23       A.    Yes.

24       Q.    And when they told you that, what did you say?

25       A.    I don't recall everything that was said at the

07826513-bc8a-431e-b22d-125ff0e47c95

**EXHIBIT 2**



Western

| | Mar Actual | Mar Budget | Mar B/(W) | Mar QTD Actual | Mar QTD Budget | Mar QTD B/(W) | % ACMP | Mar YTD Actual | Mar YTD Budget | Mar YTD B/(W) | % ACMP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cases | 2,937 | 2,948 | (11) | 6,963 | 7,381 | (418) | | 6,963 | 7,381 | (418) | |
| Gross Sales | 76,653 | 74,343 | 2,310 | 183,758 | 188,307 | (4,549) | | 183,758 | 188,307 | (4,549) | |
| Unsaleable Returns | 739 | 699 | (40) | 1,840 | 1,750 | (90) | | 1,840 | 1,750 | (90) | |
| Adjusted Gross Sales | 75,914 | 73,643 | 2,271 | 181,918 | 186,556 | (4,638) | 97.514% | 181,918 | 186,556 | (4,638) | 97.514% |
| COGS (Cost of Production) | 23,865 | 22,961 | (903) | 56,934 | 58,318 | 1,384 | | 56,934 | 58,318 | 1,384 | |
| Sales Margin | 52,049 | 50,682 | 1,367 | 124,984 | 128,238 | (3,255) | 97.462% | 124,984 | 128,238 | (3,255) | 97.462% |
| Distribution Overhead | 4,972 | 4,790 | (181) | 13,343 | 13,014 | (329) | | 13,343 | 13,014 | (329) | |
| Sales Force Overhead - Fixed | 3,688 | 3,712 | 24 | 9,868 | 10,034 | 166 | | 9,868 | 10,034 | 166 | |
| Sales Force Overhead - Variable | 4,077 | 4,049 | (28) | 9,987 | 10,413 | 426 | | 9,987 | 10,413 | 426 | |
| VAP - POP | 239 | 139 | (100) | 616 | 463 | (153) | | 616 | 463 | (153) | |
| Total POP, SF, and Distribution | 12,975 | 12,690 | (285) | 33,813 | 33,923 | 110 | | 33,813 | 33,923 | 110 | |
| Sales Contribution | 39,074 | 37,992 | 1,082 | 91,171 | 94,315 | (3,145) | 96.666% | 91,171 | 94,315 | (3,145) | 96.666% |
| | | | | | | | | | | | |
| Unsaleable | 0.964% | 0.941% | (0.023)% | 1.001% | 0.930% | (0.072)% | | 1.001% | 0.930% | (0.072)% | |
| POP | 0.312% | 0.187% | (0.125)% | 0.335% | 0.246% | (0.089)% | | 0.335% | 0.246% | (0.089)% | |
| Salesforce Overhead - Variable | 5.319% | 5.446% | 0.127% | 5.435% | 5.530% | 0.095% | | 5.435% | 5.530% | 0.095% | |
| Distribution Overhead | 6.486% | 6.444% | (0.042)% | 7.261% | 6.911% | (0.350)% | | 7.261% | 6.911% | (0.350)% | |
| Total Sales Contribution % | 51.471% | 51.589% | (0.118)% | 50.116% | 50.556% | (0.440)% | | 50.116% | 50.556% | (0.440)% | |

CONFIDENTIAL
KELLOGG 04139

**EXHIBIT 3**



The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRACY AYNES, | Case No. C07-05623 RBL |
|           Plaintiff, | |
|     v. | ***DEFENDANT'S FIFTH*** |
| | ***SUPPLEMENTAL RESPONSES TO*** |
| KELLOGG SALES COMPANY, | **PLAINTIFF AYNES'S FIRST SET OF** |
|           Defendants. | **DISCOVERY REQUESTS TO** |
| | **DEFENDANT** |

Defendant KELLOGG SALES COMPANY ("Kellogg") provides the following

supplemental responses to Plaintiff Aynes First Set of Discovery Requests to Defendant:

**GENERAL DISCOVERY OBJECTIONS**

**Defendants reiterate and incorporate the General Objections previously stated in**

**Kellogg's previous responses to Plaintiff's discovery requests.**

**DISCOVERY REQUESTS**

**INTERROGATORY NO. 7:** Identify all of your Zone Managers in Kellogg's Snacks

Division in the past ten (10) years, including in your answer the names of each, their dates of

employment, the area in which they worked, their gender, whether they remain employed as a

*DEF'S FIFTH SUPP RESP TO PLTF'S FIRST SET OF DISCOVERY*
*REQUESTS*
CASE NO. C07-05623 RBL
FIRMWIDE:86671696.1 047719.1009

-1-

86672702

LITTLER MENDELSON, P.C.
Columbia Center
701 Fifth Avenue, Suite 6500
Seattle, WA  98104.7097
206.623.3300

1  Zone Manager with Kellogg's Snacks Division, and if not, the reason they are no longer

2  employed as a Zone Manager.

3     **RESPONSE:**  Defendant objects that the interrogatory is vague, ambiguous, overbroad

4  and unduly invasive of the privacy interests of employees and former employees who are not

5  parties to this litigation.  Without waiving these objections, see KELLOGG 00408 to 00414.

6     **SECOND SUPPLEMENTAL RESPONSE:**  Without waiving the foregoing objections,

7  see documents attached as KELLOGG 04132-04138.

8     **FIFTH SUPPLEMENTAL RESPONSE:**  Without waiving the foregoing objections,

9  see documents attached as KELLOGG 57288.

10

11     **REQUEST FOR PRODUCTION NO. 18:**  Produce all documents reflecting or relating

12  to any complaints, allegations or observations of discrimination or harassment concerning

13  Kellogg employees during the past ten years.  Include any and all internal complaints, documents

14  filed with or received from the EEOC or Human Rights Commissions, and the complaints in any

15  lawsuits.

16     **RESPONSE:**  Defendant objects that the interrogatory is vague, ambiguous, overbroad

17  and unduly invasive of the privacy interests of employees and former employees who are not

18  parties to this litigation.  Subject to and without waiving the foregoing objections, defendant will

19  produce documents sufficient to respond to this Request for the Western Region, Snack Division

20  upon the entry of an appropriate protective order.

21     **FOURTH SUPPLEMENTAL RESPONSE:**  Without waiving the foregoing

22  objections, and in supplementation to the above, defendant will produce (1) complaints in

23  lawsuits and (2) EEOC and/or Human Rights Commission charges containing allegations of

24  harassment or discrimination for the Western Region, Snack Division.

25

26  *DEF'S FIFTH SUPP RESP TO PLTF'S FIRST SET OF DISCOVERY*
    *REQUESTS*
    CASE NO. C07-05623 RBL
    FIRMWIDE:86671696.1 047719.1009

LITTLER MENDELSON, P.C.
Columbia Center
701 Fifth Avenue, Suite 6500
Seattle, WA  98104.7097
206.623.3300

1     **FIFTH SUPPLEMENTAL RESPONSE:**  Without waiving the foregoing objections,

2    please see attached documents labeled KELLOGG 56979 – 57287.

3

4

5

6     **REQUEST FOR PRODUCTION NO. 19:**  Produce records showing the wages and

7    withholdings for Tracy Aynes from the start of her employment through the date of her

8    termination.

9     **RESPONSE:**  Documents sufficient to respond to RFP No. 19 are labeled KELLOGG

10   00396 to 00403.

11

12

13     **REQUEST FOR PRODUCTION NO. 20:**  Produce W-2 forms for Tracy Aynes for

14   every year of her employment.

15     **RESPONSE:**  *See* documents labeled KELLOGG 00404 to 00407.

16

17

18     **REQUEST FOR PRODUCTION NO. 21:**  Produce a report or summary of total

19   benefits paid to Tracy Aynes for the last full year of her employment.

20     **RESPONSE:**  Defendants will supplement this response.

21

22

23     **INTERROGATORY NO. 10:**  Identify each person from whom written and signed (or

24   otherwise adopted or approved) recorded or transcribed statements or reports have been secured

25   related to any of the allegations in your Complaint or Defendant's Answer.

26   *DEF'S FIFTH SUPP RESP TO PLTF'S FIRST SET OF DISCOVERY*
*REQUESTS*
CASE NO. C07-05623 RBL
FIRMWIDE:86671696.1 047719.1009

LITTLER MENDELSON, P.C.
Columbia Center
701 Fifth Avenue, Suite 6500
Seattle, WA  98104.7097
206.623.3300

1   **ANSWER:**  Defendant objects that this request for production is vague, ambiguous and

2   overbroad.  Without waiving such objection, defendant states that it has not yet gathered any

3   written statements or reports.  This Interrogatory answer will be supplemented.

4

5

6   **REQUEST FOR PRODUCTION NO. 22:**  Produce any and all documents and/or

7   tangible items that evidence any of the statements or reports that you are asked to identify in the

8   prior interrogatory.

9   **RESPONSE:**  *See,* Answer to Interrogatory No. 3.  This Response will be supplemented.

10

11

12   Dated: _Sept. 16_____, 2008

13

14                                          Leigh Ann Collings Tift, WSBA #11776

15                                          ltift@littler.com
                                            Joanna Silverstein, WSBA# 38577

16                                          jsilverstein@littler.com
                                            LITTLER MENDELSON, P.C.

17                                          Columbia Center
                                            701 Fifth Avenue, Suite 6500

18                                          Seattle, WA  98104.7097
                                            Phone:        206.623.3300

19                                          Fax:           206.447.6965
                                            E-Mail:       ltift@littler.com

20
                                            Attorneys for Defendant

21                                          KELLOGG SALES COMPANY

22

23

24

25

26   *DEF'S FIFTH SUPP RESP TO PLTF'S FIRST SET OF DISCOVERY*
     *REQUESTS*
     CASE NO. C07-05623 RBL
     FIRMWIDE:86671696.1 047719.1009

LITTLER MENDELSON, P.C.
Columbia Center
701 Fifth Avenue, Suite 6500
Seattle, WA  98104.7097
206.623.3300

1

**VERIFICATION**

2   STATE OF _____    )
                               ) ss.
3   COUNTY OF _____     )

4

5   _____, being first duly sworn on oath, deposes and says:

6   That s/he is the _____ of the Defendant Kellogg Sales Company; that s/he

7   read the within and foregoing Answers to Plaintiff's First Set of Discovery Requests to

8   Defendant, knows the contents thereof, and believes the same to be true, complete and accurate.

9   Signed this _____ day of April, 2008, at _____, _____.

10

11                                   _____

12

13   SUBSCRIBED AND SWORN to before me this _____ day of April, 2008.

14   Printed Name: _____

15   NOTARY PUBLIC in and for the State of Washington,

16   residing at _____

17   My commission expires: _____

18

19

20

21

22

23

24

25

26   *DEF'S FIFTH SUPP RESP TO PLTF'S FIRST SET OF DISCOVERY*
     *REQUESTS*
     CASE NO. C07-05623 RBL
     FIRMWIDE:86671696.1 047719.1009

                                                         LITTLER MENDELSON, P.C.
                                                         Columbia Center
                                                         701 Fifth Avenue, Suite 6500
                              -5-                        Seattle, WA 98104.7097
                                                         206.623.3300

1

## CERTIFICATE OF SERVICE

2     I am a resident of the State of Washington, over the age of eighteen years, and not a party

3  to the within action. My business address is Columbia Center, 701 Fifth Avenue, Suite 6500,

4  Seattle, Washington 98104.7097.  On September 16, 2008, I served the within documents:

5     ***DEFENDANT'S FIFTH SUPPLEMENTAL RESPONSES TO***

6     **PLAINTIFF AYNES'S FIRST SET OF DISCOVERY REQUESTS TO
       DEFENDANT**

7

8  ☐  by facsimile transmission at or about _____ on that date. The transmission
      was reported as complete and without error. A copy of the transmission report, properly

9      issued by the transmitting machine, is attached. The names and facsimile numbers of the
       person(s) served are as set forth below.

10

11 ☐  by placing a true copy of the documents(s) listed above for collection and mailing
      following the firm's ordinary business practice in a sealed envelope with postage thereon

12     fully prepaid for deposit in the United States mail at Seattle, Washington addressed as set
       forth below.

13 ☐  by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees

14     provided for, in an overnight delivery service pick up box or office designated for
       overnight delivery, and addressed as set forth below.

15

16 ☒  by causing a copy of the document(s) listed above to be personally served to the person(s)
      at the address(es) set forth below.

17
            Anne-Marie E. Sargent
18          Email: aes@cslawfirm.net
            Stephen P. Connor
19          Email: spc@cslawfirm.net
            CONNOR & SARGENT PLLC
20          1200 Fifth Avenue, Suite 1650
            Seattle, WA  98104
21          Telephone:    1-206-654-5050
            Fax:          1-206-624-5469
22

23     I am readily familiar with the firm's practice of collecting and processing correspondence

24  for mailing and for shipping via overnight delivery service. Under that practice it would be

25  deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in

26

*DEF'S FIFTH SUPP RESP TO PLTF'S FIRST SET OF DISCOVERY
REQUESTS*
CASE NO. C07-05623 RBL
FIRMWIDE:86671696.1 047719.1009

-6-

LITTLER MENDELSON, P.C.
Columbia Center
701 Fifth Avenue, Suite 6500
Seattle, WA  98104.7097
206.623.3300

1   an overnight delivery service pick-up box or office on the same day with postage or fees thereon

2   fully prepaid in the ordinary course of business.

3       I declare under the penalty of perjury under the laws of the State of Washington that the

4   above is true and correct.  Executed on September 16, 2008, at Seattle, Washington.

5

6   SALLY SWEARINGER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   *DEF'S FIFTH SUPP RESP TO PLTF'S FIRST SET OF DISCOVERY*
*REQUESTS*
CASE NO. C07-05623 RBL
FIRMWIDE:86671696.1 047719.1009

LITTLER MENDELSON, P.C.
Columbia Center
701 Fifth Avenue, Suite 6500
Seattle, WA 98104.7097
206.623.3300