HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRACY AYNES,<br><br>        Plaintiff,<br><br>    v.<br><br>KELLOGG SALES COMPANY,<br><br>        Defendant. | Case No. C07-05623 RBL<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Dkt. #46]. The Court has reviewed the materials submitted in support of, and in opposition to, the motion. Oral argument is not necessary for the Court to resolve the issues presented. For the following reasons, Defendant's motion is DENIED.[1]

**FACTUAL BACKGROUND**

Plaintiff Tracy Aynes was hired as the Zone Manager for the Pacific Northwest Zone sales team for the Kellogg Snacks Division by defendant Kellogg Sales company on September 6, 2004. Plaintiff was informed of Defendant's new ethical standards, referred to as the "K Values." Her first supervisor, Dean Allen, also informed Plaintiff that the zone she would be taking over was in poor condition and the individual who previously held her position had been terminated for poor performance.

---

[1] For the same reasons, plaintiff's summary judgment request for the claim of retaliation is DENIED.

ORDER
Page - 1

At the end of 2005, Kellogg went through management restructuring. Allen was replaced by Angelo Chiazza and a layer of management was added between Plaintiff and Chiazza. Roland Carey was appointed to the new position and Plaintiff reported directly to him.

Chiazza and Carey criticized Plaintiff's methods of communication and abrasiveness on numerous occasions in 2006. On May 18, 2006, Plaintiff was placed on a Performance Improvement Plan (PIP). Plaintiff met the standards of the PIP and it was closed after 45 days. In December 2006, following an e-mail altercation between Plaintiff and Dale House deemed by Carey to be inappropriate, Carey and Plaintiff wrote a series of e-mails in which Plaintiff referred to the good old boy's club. On January 9, 2007, Plaintiff was terminated.

Beyond these facts, the parties offer differing accounts of the events leading up to Plaintiff's termination.

## A. Plaintiff's Allegations

At the beginning of her tenure, Plaintiff was aware of the K Values but received no training about them and only attended one meeting where they were even discussed. At her interview, Allen told Plaintiff that her zone was an "absolute disaster" and there were significant personnel problems with the Account Team that would be under her control.

In her first three months, Plaintiff made appropriate personnel decisions and improved the Zone's numbers immediately. In her year-end review, Allen gave her a "B." In 2005, Plaintiff drastically improved zone performance by hitting sales budgets, reducing labor hours and reducing unsaleables. This performance was confirmed in a mid-year review by Allen. At the end of 2005, the Pacific Northwest Zone was the highest performing zone in the Western Region.

Plaintiff began to be treated differently almost immediately after the management change. Carey and Chiazza made her change the format of her meetings without having attended any and told her what food to order for them. Additionally, they spent more time in her zone and micromanaged her work. They did not micromanage male Zone Managers. Soon after the transition, Plaintiff informed Carey and Chiazza that Account Manager Ken Unruh was abusive, harassing, and threatening. She also informed them that some of her team members felt physically threatened by Unruh. Carey and Chiazza took no action. Later, Plaintiff was informed that Carey had been contacting other managers outside of work in an attempt to

obtain negative information about Plaintiff. Plaintiff asked Carey to refrain from doing so but Carey insisted he would continue. Plaintiff consequently felt she was being retaliated against for reporting Unruh's conduct and filed a report with Employee Relations. She never received a response.

Plaintiff's year-end review was very negative compared to the mid-year review conducted by Allen. It noted items Plaintiff had not accomplished and blamed her for pre-existing issues with the Account Team. Plaintiff believed she was being held to a higher standard than similarly situated males, informed Chiazza and Carey, and filed another report with Employee Relations. No action was taken. When Plaintiff's managers placed her on a PIP in May, it was the first written discipline they had given to any employee at Kellogg. The PIP included benchmarks that exceeded those given to male Zone Managers. When the PIP was closed, Plaintiff learned the Pacific Northwest Zone ranked number 1 in the nation. At the end of 2006, the Zone was tied for first in the nation.

At a dinner in the summer of 2006, Unruh would not stop rubbing Plaintiff's leg. Eventually, Plaintiff announced to everyone in the room what was going on. When Plaintiff brought the issue up to Carey, he refused to talk about it.

In November 2006, plaintiff and Account Manager Michele Alanen each filed complaints about Unruh. Kellogg launched an investigation, gave Unruh a written warning, gave him a final written warning, placed him on a PIP and eventually terminated him for violating the PIP.

In December 2006, prior to Unruh's termination, plaintiff e-mailed Unruh's supervisor House because she felt uncomfortable communicating directly with Unruh. House responded that Plaintiff needed to talk with Unruh directly. This led to the series of e-mails with Carey in which Plaintiff referred to the "good ole boy" at Kellogg. Plaintiff also told Carey she would do whatever he wanted to handle the situation.

Soon after, Plaintiff was terminated. Carey indicated that a reason for the termination was that he took issue with the preferential treatment allegation inherent in her "good ole boy" reference. The Human Resources Director for the Western Region told Plaintiff she was being terminated solely for the final e-mail and confirmed that Plaintiff had received no written warnings.

**B.     Defendant's Allegations**

When management was changed at the end of 2005, Plaintiff was happy to see the former Vice

President (David Crino) go because he was verbally assaultive to everyone.  After that, Plaintiff was fairly recognized for her sales results and criticized for her weaknesses, specifically her inability to conform to appropriate standards of communication and have collaborative, respectful interactions with others.  In January and March of 2006, Carey and Chiazza counseled Plaintiff on these topics and referenced the K Values.  Also in January, Carey sent a memorandum to Plaintiff emphasizing that she should refrain from sending "blanket emails, voice mails, or other non-productive communication."  A few days later, Chiazza had to talk to Plaintiff again for verbally assaulting Unruh and his co-workers at a dinner.  Again, Chiazza reminded Plaintiff that her conduct was unprofessional and not in line with the K Values.

Plaintiff was placed on the PIP in 2006 because she refused to model the K Values and supervisors feared her behavior would injure her credibility.  The PIP included a provision that "[f]ailure to meet and sustain an acceptable skill level will result in termination."  When the PIP was closed, Carey and Chiazza advised plaintiff to follow their instruction in the future and informed her that the slate was not wiped clean.

In September 2006, Plaintiff responded to an e-mail from an Account Manager asking for help assembling materials that "we are not AM Admins."  Believing that was a tactful response, she forwarded the e-mail to Carey.  When Carey told her to control the sarcasm, Plaintiff did not understand that Carey thought the e-mail was inappropriate.  In November 2006, Plaintiff sent an e-mail to Carey complaining that the actions of other managers were "absolute B/S."  In December 2006, Plaintiff sent an e-mail to every Distribution Center Manager in the country.  The e-mail was directed to only her own Pacific Northwest Distribution Center Managers and congratulated them on being "the best in the west."

Also in December 2006, Plaintiff sent an e-mail to House indicating that Unruh was engaged in an ethical conflict with a buyer.  Although she assumed Unruh was doing something unethical, she had not actually talked to him about it and it turned out the buyer did not think there was an ethical issue.

In response to these e-mails, Carey sent an e-mail to Plaintiff suggesting she re-think her methods of communication and call House the next time she has an issue instead of using e-mail.  Plaintiff stated House's conduct was "absolute B/S in my opinion and if anyone should receive counseling on an email that would be him."  She also went on to refer to "the Good Old Boy network at it's finest."

After six months of abrasive and divisive communications, Plaintiff was terminated.  Unruh was

terminated at approximately the same time. Although Plaintiff believed she was being held to a higher standard than Unruh because Unruh had been acting poorly for ten years, an Employee Relations representative informed her that, in fact, it was just part of a cultural shift in the company and Plaintiff was not the first employee to be held accountable.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy*, 68 F.3d at 1221.

This Court does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Thus, the record below is examined only to resolve the question of whether there is a basis for dismissal.

## DISCUSSION

**A.    Plaintiff's Gender Discrimination Claim**

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court articulated a three-part test for assessing the burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. Second, if the plaintiff succeeds in proving the prima facie case the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that

the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id*. at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978).

### 1. Plaintiff's Prima Facie Case

In order for the Plaintiff to create a prima facie case four separate requirements must be met: (1) she must belong to a protected class, (2) she must have been performing satisfactory work, (3) she must have been subject to an adverse employment decision, and (4) persons outside her protected class must have been treated better. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). The Ninth Circuit has consistently held that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," and "[a]t the summary judgment stage 'the requisite degree of proof . . . does not even need to rise to the level of a preponderance of the evidence.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (internal citations omitted); *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The Plaintiff in this case is a female, and therefore a member of a protected class. Plaintiff had significant industry experience prior to her employment with Kellogg and she improved the performance of the Pacific Northwest Zone in her time as a manager. Precisely how much she improved performance is an issue in dispute. Plaintiff's termination was an adverse employment decision. Additionally, Plaintiff has provided numerous examples of males being treated better. Thus, without making judgment on any of the Plaintiff's underlying claims, and solely for the purposes of summary judgment, Plaintiff has successfully established a prima facie case of gender discrimination against Defendant.

### 2. Defendant's Proffered Reason For Plaintiff's Termination

The Defendant may rebut the presumption of discrimination by producing evidence that the Plaintiff was terminated for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 254. "[T]he employer's burden is satisfied if he simply explains what he has done, or produc[es] evidence of legitimate, nondiscriminatory reasons." *Sweeney*, 439 U.S. at 25.

The Defendant in this case contends that Plaintiff was abrasive, confrontational, not as successful as she claims, and failed to conform to the employer's new cultural values. These reasons satisfy the

employer's burden, and shifts the burden to Plaintiff to raise a genuine issue of material fact as to whether Defendant's reason is actually a pretext for discrimination.

### 3. Whether Defendant's Reasons For Plaintiff's Termination Are Pretextual

The Ninth Circuit has held that a plaintiff can show pretext either with (1) direct evidence of the employer's discriminatory motive, or (2) indirect evidence that undermines the credibility of the employer's articulated reasons. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1169-71 (9th Cir. 2007). The Court must consider such evidence *in toto*, considering both the direct and indirect evidence available. *Lyons*, 307 F.3d at 1113.

Here, Plaintiff has identified several items of evidence which allegedly demonstrate that Defendant's proffered explanation is pretextual. First, Aynes was the only or one of only two female zone managers out of thirty total zone managers and the Human Resources Director for the Western Region, David Schultz, testified that women were underrepresented in management positions in the Western Region. Schultz dep., at 104-108. Chiazza also testified that he had promoted approximately ten zone managers prior to this lawsuit, none of whom were female. This demographic disparity is evidence from which a jury is entitled to infer a culture of discrimination and discriminatory intent in Plaintiff's termination. *See Davis v. Team Elec. Co.*, 520 F.3d 1090, 1092 (9th Cir. 2008).

Second, Plaintiff offers evidence of differential treatment. One test for pretext is whether (1) an employee outside the protected class, (2) committed acts of comparable seriousness, (3) but was not demoted or similarly disciplined. *See McDonnell Douglas*, 411 U.S. at 802-04. Plaintiff contends that males frequently had similar or worse behavior than herself but were not punished. Her examples include inappropriate communications by House, the use of profanity, Unruh's threatening behavior that went on for years before punishment, and jokes about Plaintiff's sexual orientation. Furthermore, Plaintiff was held to a higher standard of performance than male zone managers. For instance, part of her PIP included mandates that exceeded the actual performance of other zones.

Third, Plaintiff has introduced evidence that Defendant deviated from its own employment practices when it terminated Plaintiff. Deviations from regular procedures can be evidence of pretext. *See e.g., Porter v. Cal. DOC.*, 383 F.3d 1018, 1027 (9th Cir. 2004); *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1220 (10th Cir. 2002) (holding that deviations from an employer's regular procedures established

pretext). Schultz testified that an employee would only be terminated without written warnings and a PIP if they engaged in gross misconduct. Schultz Dep., Ex 5 to Sargent Dec., at 46. Schultz further confirmed that Plaintiff had not been given a final warning. *Id.* at 112-13. Additionally, Plaintiff was not on a PIP when she was terminated.

Plaintiff's evidence of pretext establishes a genuine issue of material fact to be decided by a jury. This Court will not resolve this matter on a motion for summary judgment.

**B.     Plaintiff's Hostile Work Environment Claim**

The mechanism for allocating the burden of production in hostile work environment claims is the same framework used in Title VII gender discrimination claims, the *McDonnell Douglas Corp.* burden shifting analysis.

The Plaintiff must show that she was (1) subject to unwelcome harassment, (2) the harassment changed the terms or conditions of her employment, and (3) members of the other sex were not exposed to the same terms or conditions. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993)); *see also EEOC v. Nat'l Educ. Ass'n.*, 422 F.3d 840, 844 (9th Cir. 2005).

Plaintiff has offered evidence that she was held to a higher standard than her male counterparts and those standards, by definition, changed the terms or conditions of her employment. These claims sufficiently state a prima facie case. Defendant seeks summary judgment on the grounds that the hostile acts in question must constitute sexual harassment and there are no such legitimate claims present. It is unnecessary to evaluate the merits of Plaintiff's sexual harassment claims because the 9th Circuit has held "there is no legal requirement that hostile acts be overtly sex- or gender-specific in content." *EEOC*, 422 F.3d at 844.

Plaintiff has raised a genuine issue of material fact to be decided by a jury. This Court will not resolve the matter on a motion for summary judgment.

**C.     Plaintiff's Retaliation Claim**

The burden shifting mechanism for a retaliation claim is the *McDonnell Douglas Corp.* analysis used for gender discrimination and hostile work environment claims.

For a successful retaliation claim, Plaintiff must show that (1) she was engaged in a protected

activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the employment action. *Cornwell v. Electra Central Credit Union*, 439 F.3d at 1034 (9th Cir. 2006).

Plaintiff has offered evidence that she has a retaliation claim for two events. First, she made complaints about discriminatory treatment to Carey, Human Resources and Employee Relations. Formal or informal complaints of discriminatory treatment are a protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Shortly after making those complaints, she was placed on a PIP. Temporal proximity alone may be sufficient to establish the causal nexus between a protected activity and the adverse employment action. *See, e.g., Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008); *Passantino v. Johnson & Johnson Consumer Prods.*, Inc., 212 F.3d 493, 507 (9th Cir. 2000).

Second, she was terminated soon after her e-mail to Carey accusing Kellogg of preferential treatment for males. Again, the temporal proximity alone may be enough for a reasonable jury to find a causal connection between the two.

As discussed in the context of the gender discrimination claim, Defendant has provided an alternative explanation for Plaintiff's termination and Plaintiff has raised a sufficient question of pretext. There is a factual dispute to be resolved by a jury. This Court will not decide the matter on a motion for summary judgment.

**D. WASHINGTON WAGE STATUTE CLAIM**

Whether Plaintiff is entitled to her year-end bonus is a damages question to be left to the jury. The issue will not be resolved by this Court on a motion for summary judgment.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. #46] is DENIED.

Dated this 8th day of January, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE